**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TELEMÁTICA LEFIC, S.A. DE C.V., et al.,

Plaintiffs,

vs. Case No. 3:24-cv-290-MMH-SJH

ANTONIO J. SOCORRO MARÍN, et al.,

Defendants.
___________________________________/

**ORDER**

This cause is before the Court on Defendants' ore tenus motion for judgment as a matter of law (Motion) made at the close of Plaintiffs' case-in-chief pursuant to Rule 50(a), Federal Rules of Civil Procedure (Rule(s)). The Court heard argument on the Motion on September 25, 2026. See Clerk's Minutes (Doc. 212). Accordingly, this matter is ripe for review.

## I. Background[1]

This action, which commenced on March 21, 2024, see Complaint for Violation of the Racketeer Influenced and Corrupt Organizations Act (Doc. 1),

[1] As discussed infra, for the purposes of resolving Defendants' Motion, the Court views all disputed facts and reasonable inferences in the light most favorable to Plaintiffs. See Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1114 (11th Cir. 2005). The Court notes that these facts may differ from those that were ultimately proved at trial.

was tried by a jury from September 21, 2026, see Clerk's Minutes (Doc. 202), to September 30, 2026, see Clerk's Minutes (Doc. 221). At trial, the claims before the Court included Plaintiff Telemática Lefic, S.A. de C.V.'s claims of fraud (Count II), constructive fraud (Count III), fraud in the inducement (Count IV), money had and received (Count VI), unjust enrichment (Count VII), and breach of contract (Count VIII), as well as Plaintiff Dyntra, S.A. de C.V.'s claims of fraud (Count IX), constructive fraud (Count X), fraud in the inducement (Count XI), money had and received (Count XIII), unjust enrichment (Count XIV), breach of contract (Count XV), and breach of a loan agreement and promissory note (Count XVI).[2]

During their case-in-chief, Plaintiffs, Telemática Lefic, S.A. de C.V. (Lefic) and Dyntra, S.A. de C.V. (Dyntra), presented evidence showing that each of them entered into contracts with Defendant IQuantics Corp. (IQuantics) for the purchase of information-technology (IT) equipment. Specifically, Lefic's contracts included its order for the Three Million Mass Transport Cards. See, e.g., Quote # 436 (Doc. 222-4); Invoice # 267 (Doc. 222-1); Quote # 415 (Doc. 222-

[2] The Honorable William G. Young, sitting by designation, entered summary judgment in favor of Defendants on Plaintiffs' claims of racketeering (Count I) and conversion (Counts V, XII, XX, and XXVI). See Memorandum & Order (Doc. 141), entered June 29, 2026, at 30.

In addition, on September 10, 2026, with the agreement of the parties, this Court granted Plaintiffs' Motion for Leave to Dismiss with Prejudice the Claims of Ernesto Zavala and Rosa Maria Romero Vargas (Doc. 180), filed September 9, 2026. See Clerk's Minutes (Doc. 182), entered September 10, 2026. In doing so, the Court dismissed all claims raised by Ernesto Zavala and Rosa Maria Romero Vargas. See id.

2); Quote # 438 (Doc. 222-5); Invoice # 284 (Doc. 222-7); Quote # 545 (Doc. 222-12); Invoice # 410 (Doc. 222-15).[3] Lefic's contracts also included orders for the Chip Inlay Honduras Project, see Invoice # 498 (Doc. 222-9), and the Mexican Customized Security Hologram INAMI Badges, see Invoice # 588 (Doc. 222-22); Quote # 659 (Doc. 222-23). Dyntra's contracts included orders for the Transport Card Validator Equipment, see Quote # 546 (Doc. 222-13); Invoice # 411 (Doc. 222-16), and the Kiosk Transport Card Sample, see Quote # 569 (Doc. 222-18); Invoice # 477 (Doc. 222-20). In addition to these contracts for IT equipment, Dyntra entered into a loan agreement and promissory note with IQuantics pursuant to which Dyntra loaned $150,000 to IQuantics (the Dyntra Loan). See Exh. "C" (Doc. 222-10).

Although both Lefic and Dyntra paid the amounts due under each of their contracts, IQuantics failed to perform its contractual obligations. See Joint M.D.K.R. 3.06 Final Pre-Trial Statement (Doc. 145), filed July 13, 2026, at 17–18 (noting that the parties agree that IQuantics received Plaintiffs' payments but did not deliver the goods Plaintiffs claim it should have delivered). Indeed, as to the Three Million Mass Transport Cards, IQuantics only ever delivered 270,000 cards, see id. at 18, claiming that the rest were stuck in customs and

[3] Plaintiffs' exhibits, including invoices and quotes admitted into evidence, were filed on the Court's docket on September 30, 2026. See Plaintiff's Fifth Amended Trial Exh. List (Doc. 222).

that it was experiencing difficulty with a French manufacturer. IQuantics, through Defendant Antonio Socorro Marín (Socorro), further represented to Plaintiffs that IQuantics had sued the French manufacturer and that IQuantics would perform under the contracts or return Plaintiffs' money once the lawsuit resolved. In truth, IQuantics never sued the French manufacturer. See id. As to Plaintiffs' other contracts, IQuantics never delivered any of the purchased IT equipment, and it never repaid the Dyntra Loan. See id. at 17–18.

Following Plaintiffs' case-in-chief, Defendants moved pursuant to Rule 50(a), seeking judgment as a matter of law on all claims.[4] See Clerk's Minutes (Doc. 207), entered September 24, 2026; see also Transcript of Rule 50 Motion by Defendants (Doc. 206; Rule 50 Motion Transcript), filed September 24, 2026. Relevant here, Defendants argued that Plaintiffs' claims of fraud and fraud in the inducement are barred by the independent tort doctrine. See Rule 50 Motion Transcript at 8–9. In opposition, Plaintiffs asserted that their fraud and fraud in the inducement claims are different from, have different elements and different facts than their breach of contract claims. Thus, according to Plaintiffs, these claims are independent torts under Florida law. After hearing the parties' arguments, the Court deferred ruling on the Motion as to this

[4] At the close of all evidence, Defendants renewed their Motion, and Plaintiffs made an ore tenus motion for judgment as a matter of law pursuant to Rule 50(a). See Clerk's Minutes (Doc. 212), entered September 25, 2026. The Court does not address these motions here.

specific issue. See Transcript of Rulings on Rule 50 Motions (Doc. 230), filed October 20, 2026, at 6, 9.

## II. Legal Standard

A party may move for judgment as a matter of law "at any time before the case is submitted to the jury." Rule 50(a)(2). Indeed, Rule 50(a) provides that, "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may[ ] resolve the issue against the party; and grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Rule 50(a)(1).

In resolving a motion for judgment as a matter of law, the Court must determine "whether sufficient conflict exists in the evidence to necessitate submitting the matter to the jury or whether the evidence is so weighted in favor of one side that that party is entitled to succeed in his or her own position as a matter of law." Campbell v. Rainbow City, 434 F.3d 1306, 1312 (11th Cir. 2006) (internal quotation marks omitted); Grey v. First Nat'l Bank, 393 F.2d 371, 379–80 (5th Cir. 1968).[5] The standard has also been described as whether

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

the evidence adduced at trial is legally sufficient to find for the party on that issue. See Chaney v. City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007); see also Cleveland v. Home Shopping Network, 369 F.3d 1189, 1192 (11th Cir. 2004) (explaining that the standard under Rule 50 is whether there is a "legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue"); United States ex rel. Weyerhaeuser Co. v. Bucon Constr. Co., 430 F.2d 420, 423 (5th Cir. 1970) (describing the standard under Rule 50 as "whether the evidence, considered in the light most favorable to the party against whom the motion is directed, affords substantial support for a verdict in his favor").

This is a pure question of law, and the determination is made based upon all of the evidence and viewing reasonable inferences in the light most favorable to the nonmovant. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Cleveland, 369 F.3d at 1192–93; Williams v. City of Valdosta, 689 F.2d 964, 970 (11th Cir. 1982); Weyerhauser, 430 F.2d at 423. However, "[i]t is the jury's task — not [the Court's] — 'to weigh conflicting evidence and inferences, and determine credibility of witnesses.'" Shannon v. Bellsouth Telecommunications, Inc., 292 F.3d 712, 715 (11th Cir. 2002) (quoting Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001)); see also Williams, 689 F.2d at 970 ("[I]t is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine credibility of witnesses."); Reeves, 530 U.S. at

150–51; Cleveland, 369 F.3d at 1193 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."); Popham v. City of Kennesaw, 820 F.2d 1570, 1576 (11th Cir. 1987). As a result, "the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151.

When the evidence adduced at trial supports the conclusion that "there is a genuine dispute and from which reasonable minds might draw different inferences, it is incumbent upon the court . . . to submit the question to the jury." Grey, 393 F.2d at 380; see also Walls v. Button Gwinnett Bancorp, Inc., 1 F.3d 1198, 1200 (11th Cir. 1993); Williams, 689 F.2d at 970; Foster-Thompson v. Thompson, No. 8:04-cv-2128-T-EAJ, 2007 WL 1725198, at *2 (M.D. Fla. June 14, 2007).[6] Yet, "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper." Williams, 689 F.2d at 970; see also Walls, 1 F.3d at 1200.

[6] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

Additionally, when the movant has the burden of proof on the claim or claims for which it seeks judgment as a matter of law, the movant must satisfy an exacting standard. See EEOC v. Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244, 1250 (11th Cir. 1997); see also Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 22 (1st Cir. 2002); Foster-Thompson, 2007 WL 1725198, at *2. "[T]he evidence to support the granting of the motion must be so one-sided as to be of over-whelming effect." Grey, 393 F.2d at 380; see also EEOC, 117 F.3d at 1250; Weese v. Schukman, 98 F.3d 542, 547 (10th Cir. 1996) (noting that the court may only grant a motion for judgment as a matter of law filed by a party with the burden of proof when the party "has established his case by evidence that the jury would not be at liberty to disbelieve" (quoted authority omitted)); Foster-Thompson, 2007 WL 1725198, at *2. In other words, the movant, who has the burden of proof, is only entitled to judgment as a matter of law when "the evidence is such that without weighing the credibility of the witnesses the only reasonable conclusion is in his favor." Weese, 98 F.3d at 547; see also Marrero, 304 F.3d at 22. As a result of this heavy burden, "courts rarely grant judgment as a matter of law in favor of the party having the burden of proof." Foster-Thompson, 2007 WL 1725198, at *2.

## III. Discussion

Relevant here, as set forth above, Defendants moved for judgment as a matter of law on Plaintiffs' claims of fraud (Counts II and IX) and fraud in the

inducement (Counts IV and XI), arguing that they are merely recast breach of contract claims. See Rule 50 Motion Transcript at 8–9. Upon review, Defendants' Motion is due to be granted as to this issue, and Plaintiffs' claims of fraud and fraud in the inducement are due to be dismissed as a matter of law.[7]

While the exact contours of Florida's independent tort doctrine remain unclear, see Lamm v. State St. Bank & Tr., 749 F.3d 938, 947 (11th Cir. 2014), "it is well-settled that a plaintiff may not 'recast causes of action that are otherwise breach-of-contract claims as tort claims,'" Sun Life Assurance Co. of Can. v. Imperial Holdings Inc., No. 13-80385-CIV, 2016 WL 10565034, at *5 (S.D. Fla. Sept. 22, 2016) (quoted authority omitted). Indeed, under Florida law, "[t]he independent tort doctrine bars recovery in tort for actions that challenge a breach of contract 'so as to prevent plaintiffs from recovering duplicative damages for the same wrongdoing." See Perez v. Scottsdale Ins. Co., No. 19-CV-22346, 2020 WL 607145, at *2 (S.D. Fla. Feb. 7, 2020). As such, "a party asserting a tort claim must establish conduct 'beyond and independent of breach of contract that amounts to an independent tort.'" Sun Life Assurance Co. of Can., 2016 WL 10565034, at *5 (quoting Kaye v. Ingenio, Filiale De Loto-

[7] As the Court previously stated, the Court resolves the Motion based solely on the evidence presented up to the point that Defendants made the Motion. See Rule 50 Motion Transcript at 10.

Quebec, Inc., No. 13-61687-CIV, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014) (Rosenbaum, J.)).

Generally, to determine whether a tort is independent from a breach of contract, courts consider (1) whether the alleged breach of duty in tort coincides or overlaps with a duty imposed by contract, (2) whether the tort arises from acts independent of the contract's breach, and (3) whether the damages sought in tort are clearly economic in nature and identical to those available by contract. See Atout as Tr. of HHM Land Tr. Dated Oct. 29, 2013 v. Rozanc, No. 6D2023-2302, 2026 WL 2207239, at *5–6 (Fla. 6th DCA July 31, 2026); see also Travelers Indem. Co. of Conn. v. Richard McKenzie & Sons, Inc., 326 F. Supp. 3d 1332, 1345 (M.D. Fla. 2018) ("If a contract imposes a duty and the defendant breaches that duty, the plaintiff must sue for breach of contract. If society imposes the duty, the plaintiff must sue in tort."), aff'd, 10 F.4th 1255 (11th Cir. 2021); Frutafino, S.A.S. v. Dole Chile, S.A., 405 So. 3d 497, 500 (Fla. 3d DCA 2025) (noting that, for a tort claim to survive the independent tort doctrine, it "must go beyond and be independent from the failure to comply with the contract"); Peebles v. Puig, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017) ("[F]or an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate and distinct from the damages sustained from the contract's breach.").

For claims sounding in fraud, "the critical inquiry focuses on whether the

alleged fraud is separate from the performance of the contract." Kaye, 2014 WL 2215770, at *5. Notably, a claim of "fraud in the performance of a contract cannot give rise to an 'independent cause of action in tort." Yuken Corp. v. Gedcore LLC, No. 22-20661-CIV, 2022 WL 3701233, at *5 (S.D. Fla. June 21, 2022) (cited authority omitted). But, in some cases, a claim of fraud in the inducement based on pre-contractual misrepresentations can constitute an independent tort. See Kaye, 2014 WL 2215770, at *5 ("Fraudulent inducement is generally 'a tort independent from a breach of contract because it requires the plaintiff to prove facts separate and distinct from the facts necessary to prove the breach of contract.'" (quoting Freeman v. Sharpe Res. Corp., No. 6:12-CV-1584-ORL-22T, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013))); see also Yuken Corp., 2022 WL 3701233, at *5 (stating that a claim of fraud in the inducement based on pre-contractual misrepresentations "does not altogether run afoul of the independent tort doctrine"); Rossi v. Darden, No. 16-21199-CIV, 2016 WL 11501449, at *9, *10 (S.D. Fla. July 19, 2016) (finding that the plaintiffs alleged plausible fraudulent inducement claims because the defendants made representations materially separate from any fraud that may have occurred during the performance of the contract). However, simply using the phrase "fraud in the inducement," or other similar terminology, is insufficient for a claim to evade application of the independent tort doctrine. See Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So. 2d 74, 77 (Fla. 3d DCA

1997); Yuken Corp. 2022 WL 3701233, at *5. "Regardless of when the misrepresentations were made, the question that must be answered is whether the representations at issue concern the heart of the parties' agreement." Monsoon, Inc. v. Bizjet Int'l Sales & Support, Inc., No. 16-80722-CIV, 2017 WL 747555, at *10 (S.D. Fla. Feb. 27, 2017); Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1223 (11th Cir. 2018) ("'Misrepresentations relating to the breaching party's performance of a contract do not give rise to any independent cause of action in tort, [where] such misrepresentations are interwoven and indistinct from the heart of the contractual agreement.'") (quoted authority omitted)). Ultimately, where a claim of fraud or fraud in the inducement is "inextricably intertwined with the alleged breach of contract," the claim is precluded by Florida's independent tort doctrine. See Perez, 2020 WL 607145, at *3.

Here, in support of their claims of fraud and fraud in the inducement, Plaintiffs presented evidence showing that Defendants misrepresented (1) that IQuantics could and would deliver the IT equipment ordered under each contract, (2) that IQuantics had ordered three million mass transport cards, but that they were delayed in customs, (3) that IQuantics had sued the French manufacturer, and (4) that IQuantics would perform or return Plaintiffs' money once the lawsuit against the French manufacturer resolved. But, even viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs' claims of fraud

and fraud in the inducement are merely recast breach of contract claims precluded under Florida law.

Although Plaintiffs attempt to frame their claims as independent from the essence of the contracts and use the phrase "fraud in the inducement," the misrepresentations forming the basis of Plaintiffs' claims are inseparable from the parties' contractual agreements. For example, Plaintiffs' claims of fraud and fraud in the inducement are both based on Defendants' misrepresentations that IQuantics could and would deliver the three million mass transport cards and other IT equipment that Plaintiffs ordered.[8] While these might be pre-contractual misrepresentations, each of these misrepresentations concerns the heart of, and is inextricably intertwined with, the performance of the parties' contracts. Indeed, they concern IQuantics's failure to deliver the mass transport cards and IT equipment – a duty undertaken and imposed by contract. Moreover, each of Defendants' misrepresentations expressly relates to matters covered in the contracts. The invoices evidencing the agreements between the parties specify the exact equipment that IQuantics was to deliver in exchange for the price that the applicable Plaintiff was to pay. See, e.g., Invoice # 267

[8] "Generally, a fraudulent statement must concern a past or existing fact," not a promise to do something in the future. Frutafino, S.A.S., 405 So. 3d at 500 (quoted authority omitted). However, Florida courts recognize an exception to this rule where "the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform." Id. (quoting Mejia v. Jurich, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001)).

(Doc. 222-1); Invoice # 284 (Doc. 222-7); Invoice # 498 (Doc. 222-9); Invoice # 408 (Doc. 222-14); Invoice # 410 (Doc. 222-15); Invoice # 411 (Doc. 222-16); Invoice # 477 (Doc. 222-20); Invoice # 588 (Doc. 222-22). Accordingly, even viewing the evidence in the light most favorable to Plaintiffs, these misrepresentations were subsumed within the contracts, and any failure to comply with those terms resulted in a claim for breach of contract, not one sounding in fraud. See Kaye, 2014 WL 2215770, at *5 ("While the initial promise may have been fraudulent, the terms of the purported fraud were memorialized in the [contract]. As a result, any failure to comply with those terms results in an action for breach of contract."); McDowell v. Moore, 434 So.3d 738, 753 (Fla. 4th DCA 2026) ("[W]here a written agreement addresses the alleged misrepresentation's subject matter, Florida law precludes a fraud claim based on prior or contemporaneous statements that are inconsistent with or subsumed within the agreement.").

Similarly, the remainder of the misrepresentations forming the basis of Plaintiffs' fraud and fraud in the inducement claims, including that the mass transport cards were delayed in customs and that IQuantics had sued the French manufacturer and would refund Plaintiffs' money or perform under the agreements once the lawsuit resolved, are also inextricably intertwined with the heart of the parties' contractual agreements. Notably, Defendants made these misrepresentations during the performance of the contract for the Three

Million Mass Transport Cards. Moreover, the misrepresentations relate to matters expressly covered in the parties' contractual agreements. Indeed, these misrepresentations were excuses for IQuantics's failure to deliver the IT equipment specified in the quotes and invoices. In this way, these misrepresentations pertain to, and cannot be separated from, IQuantics's contractual duty to deliver IT equipment. Thus, although Defendants' representations may have delayed the filing of this action — a fact relevant to Plaintiffs' claim of equitable estoppel — they fail to provide a basis for an independent claim under Florida law. [9]

Finally, even if Defendants' misrepresentations were not inseparable from the parties' contracts, Plaintiffs' claims would still fail. None of Defendants' misrepresentations resulted in independent, separate and distinct damages so as to give rise to an independent cause of action in tort. In their case-in-chief, Plaintiffs presented no evidence of any damages apart from the economic losses resulting from IQuantics's breaches of the parties' contracts —

[9] The Court notes that Dyntra did not allege a claim of fraud in the inducement as to the Dyntra Loan. See Amended Complaint ¶¶ 113–19. But Dyntra does mention the loan in its claim of fraud. See id. at ¶ 97 (alleging that, before Dyntra made the loan, Socorro represented that he was facing cash flow problems, in part, because of the lawsuit with the French manufacturer). As explained below, even if Dyntra had alleged fraud in the inducement as to the Dyntra Loan, its claim would be precluded by the independent tort doctrine because Plaintiffs presented no evidence of any damages separate and distinct from IQuantics failure to repay the loan as required by the parties' written agreement. See Peebles, 223 So. 3d at 1068 ("It is similarly well settled that, for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate and distinct from the damages sustained from the contract's breach."); Yuken Corp., 2022 WL 3701233, at *6.

the money paid to IQuantics under the agreements and special damages incurred as a result of IQuantics's breach. See, e.g., Plaintiffs' Exhibit 29 (Doc. 222-8) (evidencing the penalty imposed on Lefic); Bank of America Statements (Doc. 222-39) (reflecting Plaintiffs' payments to IQuantics). Therefore, even viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs' claims of fraud and fraud in the inducement cannot be properly characterized as independent torts. See Yuken Corp., 2022 WL 3701233, at *6 (holding that, even though a plaintiff's tort claims stemmed from separate conduct, the claims were still barred by the independent tort doctrine because plaintiffs failed to allege separate damages). And, as a result, Florida's independent tort doctrine bars Plaintiffs' claims of fraud and fraud in the inducement.[10]

---

[10] The Court notes that Florida's District Courts of Appeals are split as to whether the independent tort doctrine applies to tort claims brought against a corporation's officer. Compare Costa Inv'rs, LLC v. Liberty Grande, LLC, 353 So. 3d 627, 634 (Fla. 4th DCA 2022) (noting that the independent tort doctrine requires contractual privity and finding that a corporate officer was not shielded by the doctrine), with Atout as Tr. of HHM Land Tr. Dated Oct. 29, 2013, 2026 WL 2207239, at *8 (holding that the independent tort doctrine shields corporate officers from liability from torts which arise solely from their performance of a contract as an employee). Under the circumstances presented in this case, for Florida's independent tort doctrine to maintain a meaningful boundary, it must shield corporate officers and employees acting on behalf of a corporation in the performance of a contract. To allow otherwise would enable Plaintiffs to circumvent contract law, allowing them to hold officers personally liable on claims that are, in substance, breach of contract claims, without any piercing of the corporate veil. See Atout as Tr. of HHM Land Tr. Dated Oct. 29, 2013, 2026 WL 2207239, at *8 (quoting Vesta Const. & Design, L.L.C. v. Lotspeich & Assocs., Inc., 974 So. 2d 1176 (Fla. 5th DCA 2008) for the proposition that it would undermine the independent tort doctrine "to allow any party which contracts with a corporation to avoid the rule by simply bringing its tort claim directly against the corporate officers or employees tasked with performing the contract on behalf of the corporation"). Additionally, in circumstances like this, where the tort itself causes no distinct damages, requiring strict contractual privity results in a double recovery of damages for the same wrongful conduct. See Peebles v. Puig, 223 So. 3d

## IV. Conclusion

Although Plaintiffs attempt to frame their claims as sounding in fraud, their claims are, in substance, recast breach of contract claims. Indeed, the claims ultimately hinge on IQuantics's failure to deliver IT equipment – a duty imposed by and inseparable from the contracts between the parties. Because all of Defendants' misrepresentations are inextricably intertwined with the heart of the contracts, and because none of the misrepresentations resulted in distinct damages, Plaintiffs' claims of fraud and fraud in the inducement are precluded under Florida law.

---

at 1069 (noting that a plaintiff may not recover damages for fraud that are identical to damages awarded for breach of contract).

However, the Court need not decide this issue. Even if the independent tort doctrine does not apply to Socorro individually, Plaintiffs' claims of fraud and fraud in the inducement still fail for lack of an actionable misrepresentation. Claims sounding in fraud require proof of damages resulting from the fraud. See Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010) (outlining the elements for a claim of fraudulent misrepresentation); Democratic Republic of the Congo v. Air Cap. Grp., LLC, No. 12-20607-CIV, 2013 WL 3223686, at *6 (S.D. Fla. June 24, 2013) ("To maintain a fraudulent-inducement claim, a plaintiff must have suffered injury in reliance on the misrepresentation."). Here, although Defendants' representations may have delayed the filing of this action — a fact relevant to Plaintiffs' claim of equitable estoppel — Plaintiffs presented no evidence showing that the misrepresentations themselves resulted in damages. As reprehensible as Socorro's conduct may have been, Plaintiffs' damages were occasioned by IQuantics's breaches of contracts. Without proof of any damages attributable to their fraud and fraud in the inducement claims, Plaintiffs' claims fail as a matter of law. See Peebles v. Puig, 223 So. 3d at 1069 ("At the end of the day, [the plaintiff] was damaged not because of [the officer's] misrepresentations, but because [the company] failed to honor its contractual obligations."); see also La Pesca Grande Charters, Inc. v. Moran, 704 So. 2d 710, 713 (Fla. 5th DCA 1998) ("There isn't necessarily damage where there is fraud, which is why no cause of action for fraud exists unless there is damage due to fraud that is separate from damages that may result from any subsequent contractual breach.").

Accordingly, it is

**ORDERED:**

Defendants' ore tenus motion for judgment as a matter of law, made at the close of Plaintiffs' case-in-chief, is **GRANTED, in part**, to the extent that Plaintiffs' claims of fraud (Counts II and IX) and fraud in the inducement (Counts IV and XI) are **DISMISSED**.

**DONE AND ORDERED** in Jacksonville, Florida this 10th day of November, 2026.

Marcia Morales Howard

**MARCIA MORALES HOWARD**
United States District Judge

Lc35

Copies to:

Counsel of record